Wallace L. STAHOVIC and Dorothy E. Otto,
Relators-Appellants,

v.

Henry A. RAJCHEL, Respondent,

Francis P. HAVEY and John W. Gazvoda,
Intervenors-Respondents.

Court of Appeals

*No. 83–2260. Submitted on briefs November 7, 1984.—
Decided December 10, 1984.*
(Also reported in 363 N.W.2d 243.)

For the relators-appellants the cause was submitted on the briefs of *Michael O. Bohren* and *Patrick D. Wait* of counsel, of Milwaukee.

For the respondent the cause was submitted on the briefs of *Roger C. Pyzyk* of West Allis.

For the intervenors-respondents the cause was submitted on the briefs of *Harold H. Fuhrman* of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J.  Wallace L. Stahovic (Stahovic) and Dorothy E. Otto (Otto) appeal from an order for judgment[1] dismissing their petition for writ of certiorari to require Henry A. Rajchel, city clerk of the city of Greenfield (Greenfield city clerk), to file certain recall petitions with the Milwaukee county clerk of courts. We reverse the trial court's ruling that the Greenfield city clerk correctly disallowed entire pages of recall petition signatures on the ground that one or more of such signatures was invalid.

In June, 1983, a group of citizens began a recall petition drive in the city of Greenfield for the purpose of recalling three elected officials—Mayor Francis P. Havey, Alderman John W. Gazvoda and Alderman Ron Zepnick. The citizens did not obtain a sufficient num-

---

[1] Although this appeal is taken from an order for judgment, which is not usually a final order appealable as of right, *see Mitler v. Associated Contractors*, 3 Wis. 2d 331, 332–33, 88 N.W.2d 672, 673 (1958), we have determined that the instant order for judgment was a final order in that the trial court did not contemplate a document subsequent to it. *See Radoff v. Red Owl Stores, Inc.*, 109 Wis. 2d 490, 493, 326 N.W.2d 240, 241 (1982). The trial court ordered "that the Writ of Certiorari *is dismissed* for reasons set forth in the attached . . . decision . . . ." (Emphasis supplied.)

ber of signatures for recall of Alderman Zepnick; thus, the only petitions ultimately filed were those for recall of Mayor Havey and Alderman Gazvoda.

On August 5, 1983, the citizens filed 221 pages of petitions containing 2,968 signatures for recall of Mayor Havey and 49 pages of petitions containing 685 signatures for recall of Alderman Gazvoda. The required number of signatures for recall of these officials was 2,820 for Mayor Havey and 589 for Alderman Gazvoda.[2]

Within the ten days set by sec. 9.10 (4) (a), Stats., the Greenfield city clerk reviewed the petitions and determined that they contained a number of defects, e.g., undated signatures, improper dates, dates added by one other than the signer, more than one signature by the same person, signatures made by non-residents of Greenfield, signatures made on behalf of others, and printed instead of written signatures. Where the Greenfield city clerk found a defective signature, he disallowed the entire page of signatures (each petition page had room for ten signatures and the affidavit of the circulator). The Greenfield city clerk reasoned that even one defective signature impeached the circulator's affidavit and that, therefore, the remaining signatures on the page must also be disallowed. The clerk found that 286 signatures were invalid in the recall petition for Mayor Havey and that 186 signatures were invalid in the recall petition for Alderman Gazvoda. Accordingly, the clerk found the petitions deficient by 138 and 90 signatures, respectively, and would not file the petitions with the Milwaukee county clerk of courts.

On August 25, 1983, Stahovic and Otto filed a petition for writ of certiorari with the Milwaukee county circuit

[2] Sec. 9.10(1), Stats., requires that a petition for recall be signed by electors equal to at least 25 percent of the vote cast for the office of governor in the last election within the district from which the officeholder is being recalled.

court. The circuit court rendered a decision from the bench on October 4, 1983, upholding the actions of the Greenfield city clerk. The court dismissed the writ of certiorari in an order for judgment dated November 7, 1983.

Stahovic and Otto filed a notice of appeal on November 22, 1983, which we dismissed on the ground of mootness on March 1, 1984. On March 19, 1984, on our own motion, we reconsidered our dismissal and directed resubmission of the appeal.

Our determination that the issue on appeal was moot was based on the fact that neither of the officials in question is in office any longer. Mayor Havey did not run for re-election, and Alderman Gazvoda was defeated in his bid for re-election. A case is moot when a determination is sought upon a matter which, when rendered, cannot have any practical legal effect upon a then existing controversy. *Milwaukee Police Association v. City of Milwaukee,* 92 Wis. 2d 175, 183, 285 N.W.2d 133, 137 (1979).

However, the general rule that a moot appeal will be dismissed is not adhered to unbendingly. If interests of a public character are asserted under conditions that are likely to be repeated, we may address the merits of an otherwise moot issue. *See Wisconsin Employment Relations Board v. Allis-Chalmers Workers' Union,* 252 Wis. 436, 441, 32 N.W.2d 190, 192 (1948). We conclude that, although the issue on this appeal is moot as to the parties involved, the issue is one of sufficient public character, interest and significance that it ought to be considered. *See Mueller v. Jensen,* 63 Wis. 2d 362, 366–67, 217 N.W.2d 277, 279 (1974).

## STANDARD OF REVIEW

On review by certiorari of a municipal officer's determination, the reviewing court is limited to considering (1) whether the officer kept within his jurisdiction; (2) whether he acted according to law; (3) whether his action was arbitrary, oppressive or unreasonable and represented his will and not his judgment; and (4) whether the evidence is such that he might reasonably have made the determination in question. *State ex rel. Geipel v. City of Milwaukee,* 68 Wis. 2d 726, 731–32, 229 N.W.2d 585, 588 (1975). Our inquiry in the instant case will focus on whether the Greenfield city clerk acted according to law. Specifically, the issue is whether the Greenfield city clerk correctly interpreted Wisconsin law when he invalidated entire petition pages because of one or more defective signatures on a page.

## THE RIGHT OF RECALL

The right to recall elective officers of congressional, judicial, or legislative districts, or of counties, is constitutional. *See* Wis. Const. art. XIII, sec. 12. The right to recall municipal officials, however, is solely a creature of statute. *See* sec. 9.10, Stats.; *see also Beckstrom v. Kornsi,* 63 Wis. 2d 375, 383, 217 N.W.2d 283, 288 (1974).

While the right to recall municipal officials was created by the legislature, it has constitutional stature by virtue of the provisions contained in sec. 9.10(7), Stats.: "The purpose of this section is to facilitate the operation of article XIII, section 12, of the constitution and to extend the same rights to electors of cities, villages, towns and school districts."

Section 9.10 (2) (a), Stats., provides in part that the "preparation and form of the recall petition shall be governed by s. 8.15." Section 8.15, Stats., sets forth the procedures applicable to nomination papers. Among other things, the section provides that only one signature per person for the same office is valid, that each signer shall list his or her residence and address and the date of signing, and that the affidavit of the qualified elector who circulated the petition must appear on the bottom of the paper, stating that he or she personally circulated the paper, is personally acquainted with the signers, knows they are electors of the district in question, knows they signed the paper with knowledge of its content, knows they signed on the date given, and that he or she, the affiant, is a resident of the particular district. Sec. 8.15 (2) and (4) (a).

No party disputes that a transgression of a signature provision invalidates the signature. The question remains whether such a transgression invalidates the entire petition page because it impeaches the affidavit of the circulator. We conclude that it does not.

We begin with the fundamental principle that, in construing election laws, the will of the electorate is to be furthered. Section 5.01 (1), Stats., entitled "Scope: Construction of Chs. 5 to 12," provides as follows: "Chapters 5 to 12 shall give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of its provisions." To reject otherwise valid signatures in a petition because one signature on the page was defective would be to defeat the above-stated policy. "The object of election laws is to secure the rights of duly qualified electors and not to defeat them." *State ex rel. Dithmar v. Bunnell*, 131 Wis. 198, 206, 110 N.W. 177, 181 (1907) (citation omitted).

A review of Wisconsin case law demonstrates that substantial, and not literal, compliance with election laws has been deemed consistent with sec. 5.01, Stats. In *Lanser v. Koconis*, 62 Wis. 2d 86, 214 N.W.2d 425 (1974), the supreme court ruled that technical noncompliance with a statutory provision for delivery of absentee ballots did not render the ballots invalid and that despite technical noncompliance with the signature provisions for absentee ballots, the voters were entitled to have their votes counted. "If they have not technically complied with [a] provision because it requires their signatures at the end of the certification, they have substantially complied with the law and their votes were properly counted." *Id.* at 97, 214 N.W.2d at 430. In *Gradinjan v. Boho*, 29 Wis. 2d 674, 682, 139 N.W.2d 557, 561 (1966), the supreme court said, "In keeping with [a predecessor of sec. 5.01, Stats.], this court has quite consistently construed the provisions of election statutes as directory rather than mandatory so as to preserve the will of the elector."

■

We are persuaded that it would not be in keeping with the provisions of sec. 5.01, Stats., to reject otherwise valid signatures, representing the will of the electorate, because they appear on the same page as an invalid signature. The supreme court has characterized individual signatures as "separate" and "independent:"

[E]ach signature is to be regarded as a separate and independent unit and by itself and cannot be added to or have necessary elements supplied from or by that which may be done in the same petition by others,— intending by this, of course, to in no wise question the validity of such signer making as his own, by appropriate ditto marks or common abbreviation, that which may appear above his signature and as part of the same paper.

*State ex rel. Baxter v. Beckley,* 192 Wis. 367, 371, 212 N.W. 792, 794 (1927). If a signature "cannot be added to or have necessary elements supplied" by other signatures, then neither should a signature be detracted from or discredited by the flaws contained in neighboring signatures.

In disallowing entire pages of recall petitions on grounds of non-residency of one of the signers, the Greenfield city clerk acted in conformity with a proposed administrative code rule which provides that "[n]one of the signatures on a separate petition sheet will be counted if . . . any signature on the sheet is signed by a person who is not a resident of the district of the elected official being recalled." [Proposed] Wis. Adm. Code, sec. El Bd 2.09(6)(a) (19—).[3] The Greenfield city clerk took it upon himself to expand the application of this proposed administrative rule by throwing out every petition sheet with a non-complying signature, regardless of the nature of the violation.

We believe the above rule, as proposed, is inconsistent with sec. 9.10(7), Stats., and thus with art. XIII, sec. 12, of the Wisconsin Constitution. Section 12 of art. XIII, entitled "Recall of elective officers" (applicable to other than municipal officers), contains no provision authorizing invalidation of otherwise valid recall signatures simply because they appear on a petition with a defective signature. Subsection (7) of sec. 12 states that the section "shall be self-executing and mandatory" and

---

[3] A letter dated December 8, 1983, from the executive secretary of the State Elections Board to the city attorney of the city of Greenfield explains that sec. El Bd 2.09 was promulgated as an emergency rule in 1982, has since expired, but is still being followed and will be placed in the Administrative Code. The letter goes on to explain that the Elections Board uses a stricter standard of scrutiny for recall petitions than it does for nomination papers.

that "[l]aws may be enacted to facilitate its operation but no law shall be enacted to hamper, restrict or impair the right of recall." Section 9.10(7), Stats., makes the rights and protections of art. XIII, sec. 12, applicable to the recall of city officials. We are persuaded that proposed sec. 2.09(6)(a) of the administrative code, sec. El Bd, hampers, restricts and impairs the right of recall of city officials by denying qualified petitioners their right to be heard.

We ordinarily accord great weight to an administrative agency rule interpreting a law which the agency is charged with applying, *see Pigeon v. DILHR,* 109 Wis. 2d 519, 524–25, 326 N.W.2d 752, 755 (1982), but we do not have to accept an agency rule which is inconsistent with the purpose of the statute being interpreted. *Cf. Milwaukee County v. DILHR,* 80 Wis. 2d 445, 455–56, 259 N.W.2d 118, 123–24 (1977). We hold that proposed sec. El Bd 2.09(6)(a) of the Wisconsin Administrative Code is contrary to sec. 9.10(7), Stats., and contrary to art. XIII, sec. 12, of the Wisconsin Constitution.

Case law from other jurisdictions reinforces our conviction that striking an entire page of signatures for one invalid signature violates the right of recall by denying valid signatories the right to be heard. Directly on point is *In re Bower,*[4] 242 N.E.2d 252 (Ill. 1968), which held that in the absence of proof of active fraud, petitions containing improper signatures would not be stricken in their entirety but that only the improper signatures would be disallowed. *Id.* at 257–58. The Illinois Supreme Court cited with approval *Pafford v. Hall,* 233 S.W.2d 72 (Ark. 1950). In *Pafford* the Arkansas Supreme Court held that "one who attacks a petition

---

[4] *In re Bower* was cited in *Mueller v. Jensen,* 63 Wis. 2d 362, 374 & n. 3, 217 N.W.2d 277, 283 & n. 3 (1974), for the proposition that statutory provisions relating to recall are liberally interpreted in favor of the electorate.

cannot destroy the verity of the circulator's affidavit merely by proving that at least one signature [per page] is not genuine." *Id.* at 74. In *In re Initiative Petition No. 272,* 388 P.2d 290, 293 (Okla. 1964), the Oklahoma Supreme Court said that "in order to invalidate all signatures upon a pamphlet, more proof is required than the presence of a single false signature or of some false signatures on the sheet." Accord, *Oklahomans for Modern Alcoholic Beverage Controls, Inc. v. Shelton,* 501 P.2d 1089, 1092–95 (Okla. 1972).

In conclusion, we hold that the spirit of Wisconsin law requires that, absent fraud, only invalid signatures be disallowed in a petition for recall. This rule does not impugn the integrity of the recall process, and it avoids thwarting the will of the electors. The Greenfield city clerk acted on an incorrect theory of the law in striking whole petition pages for one or more invalid signatures. The trial court erred in dismissing the petition for writ of certiorari. The trial court's order for judgment is therefore reversed.

*By the Court.*—Order reversed.